## UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF ILLINOIS

CASE NUMBER:

**CANDLE WITCH COMPANY LLC**,
 An Illinois limited liability company,

Plaintiff,
 v.
 **CANDLE WITCH CO LLC**,
 a Connecticut limited liability company,

Defendant.

_____/

## <u>PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL</u>

**COMES NOW,** Plaintiff, CANDLE WITCH COMPANY LLC ("Plaintiff"), by and through its undersigned counsel, for its Complaint against Defendant CANDLE WITCH CO LLC ("Defendant"), and states as follows:

1.      This is an action for trademark infringement, unfair competition, business torts, and related claims arising from Defendant's unauthorized use of a mark confusingly similar to Plaintiff's federally registered trademark, "CANDLE WITCH COMPANY" (the "Mark"). Defendant has initiated a trademark cancellation proceeding before the Trademark Trial and Appeal Board ("TTAB") while simultaneously interfering with Plaintiff's prospective business relationships. Plaintiff seeks injunctive and declaratory relief, damages, and a stay or dismissal of the TTAB cancellation action.

**JURISDICTION AND VENUE**

2.     This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and

1338 (federal question and trademark laws), and supplemental jurisdiction over the state law

claims under 28 U.S.C. § 1367.

3.     This Court has personal jurisdiction over Defendant, who has directed conduct toward

Illinois residents, initiated a TTAB proceeding impacting an Illinois registrant, and contributed to

confusion and harm within this District.

4.     Venue is proper under 28 U.S.C. § 1391(b) because Plaintiff resides in this District and a

substantial part of the events giving rise to the claims occurred here.

5.     Plaintiff Candle Witch Company, LLC, is an Illinois limited liability company with its

principal place of business located at 1237 12th Ave., Moline, Illinois 61265.

6.     Defendant Candle Witch Co LLC is a Connecticut limited liability company with a

principal place of business at 108 N. Turnpike Rd., Apt. F, Wallingford, Connecticut 06492.

Defendant is the Petitioner in TTAB Cancellation No. 92088335.

**FACTUAL BACKGROUND**

7.     Plaintiff Candle Witch Company LLC ("Plaintiff") is the lawful owner of U.S. Trademark

Registration No. 7,538,579 for the mark "CANDLE WITCH COMPANY." A true and correct

copy is attached hereto as "Exhibit A."

8.     Plaintiff began using the mark continuously and in good faith in commerce as early as

November 2017, when it was already identifying its business as "Candle Witch Company" in

connection with the production and sale of artisanal candles. In correspondence with business

partners, Plaintiff was using the name "Candle Witch Company" as its source identifier on or before November 3, 2017, and had commenced preparations for product labeling, marketing, and consumer sales. See "Exhibit B."

9.      On or about March 11, 2018, Plaintiff adopted the name "Candle Witch Company" for its official Facebook business page. The page has been maintained as a key channel for branding, customer interaction, and promotion of Plaintiff's candle products. See "Exhibit C."

10.     Since that time, Plaintiff has continued to use the mark "Candle Witch Company" in commerce, expanding its online presence, developing customer goodwill, and investing in brand identity through various retail, social media, and e-commerce channels.

11.     On November 8, 2022, Plaintiff filed a federal trademark application. The application proceeded without opposition and was registered on October 15, 2024, conferring nationwide priority and statutory presumptions of validity and exclusive ownership.

12.     During this time, Plaintiff invested substantial resources in brand development & protection, advertising, and customer outreach. Plaintiff operates a retail store in Geneseo, Illinois, and maintains an active online presence, as well as a strong presence on various social media platforms, including Facebook, Instagram, and TikTok, under the established name "Candle Witch Company." Plaintiff has marketed its product in various states and has been selling its products to consumers nationwide, without interruption, and with continued use of the Mark to distinguish its products in the eyes of consumers. The Mark has become associated with high-quality handcrafted goods and has garnered substantial goodwill, which is exclusively associated with Plaintiff.

**DEFENDANT'S ALLEGED USE AND FAILURE TO ACT**

13.     Defendant, a Connecticut-based entity, now alleges unregistered use of the name "CANDLE WITCH" beginning in 2020, but never filed a trademark application, nor took any steps to protect the mark at the USPTO or in court prior to 2025. Defendant had actual or constructive knowledge of Plaintiff's application, but failed to oppose the mark during the public opposition period following publication in the Official Gazette.

14.     On November 8, 2022, the very day Plaintiff filed its application, Defendant sent a vague Facebook message objecting to Plaintiff's use but failed to assert clear rights or identify any business entity. See "Exhibit D." Plaintiff reasonably interpreted this as a non-actionable inquiry and proceeded in good faith with its branding and legal protection strategy. The Facebook message sent by the Defendant is prima facie evidence that the Defendant had knowledge of the Plaintiff using the Mark in connection with the applied-for goods, but chose not to act upon it.

**TAKEDOWNS, CEASE AND DESIST, AND TTAB FILING**

15.     In early 2025, Plaintiff, being the rightful owner of the federally registered Mark and holder of the trademark certificate and having exclusive rights by virtue of this trademark certificate, through its principal and in a personal capacity, issued takedown requests to social media platforms where Defendant was using infringing branding, to safeguard its interests. Some of these takedowns were successful.

16.     On April 21, 2025, Defendant, through legal counsel, sent a cease-and-desist letter to Plaintiff alleging prior use of the CANDLE WITCH mark since September 2021, and asserting common law rights in the state of Connecticut. A true and correct copy of this letter is attached as "Exhibit E." The letter claimed that Plaintiff's enforcement actions had disrupted Defendant's

operations by triggering the takedowns of its Linktree and TikTok accounts. Defendant demanded that Plaintiff cease interfering with its social media presence, claimed to possess evidence of actual consumer confusion, and threatened to initiate a TTAB cancellation proceeding unless Plaintiff agreed to limit its business to a geographic region outside of Connecticut. Plaintiff responded to the cease-and-desist letter by asserting lawful, superior rights and rebutting all bad-faith allegations.

17. On or about May 2, 2025, Plaintiff issued a formal cease-and-desist letter to Defendant requesting discontinuation of the infringing use. Instead of complying, Defendant scoffed at the request and continued to use the name willfully and with knowledge of Plaintiff's rights. Attached hereto as "Exhibit F."

18. The exchange of cease and desist letters between the parties, including the messages sent by the Defendant as early as 2022 to Plaintiff, is prima facie evidence that the Parties have admitted the marks are confusingly similar and infringe upon each other.

19. The difference between the Mark and the Defendant's mark is the addition of the suffix Company in the Mark; the remainder of the mark is identical to the mark the Defendant is claiming common law rights over.

20. On May 9, 2025, in response to Plaintiff's reply to Defendant's Cease and Desist letter, the Defendant initiated Cancellation Proceeding No. 92088335 before the TTAB. A true and correct copy is attached hereto as "Exhibit G,"  asserting claims of priority and alleged fraud. Defendant's TTAB filing followed as a last resort effort after failing to protect any rights through proper legal means. It is retaliatory, baseless, and intended to harass and disrupt Plaintiff's growing business.

**DEFENDANT'S USE IS INSUFFICIENT TO ESTABLISH COMMON LAW RIGHTS**

21.     Although Defendant now claims to have used "CANDLE WITCH" since 2020, that use has been sporadic, geographically limited, and commercially minimal. Courts have held that minimal use, even if prior in time, does not give rise to enforceable common law rights that can overcome the presumptions created by a federal registration.

22.     Defendant has presented no evidence of substantial commercial activity or market recognition before Plaintiff's use. Moreover, Defendant's failure to oppose Plaintiff's application when given the opportunity is fatal to any claimed priority.

23.     Defendant must also demonstrate subsisting and continued use of the mark in commerce for the same class of goods as Plaintiff. However, Defendant has failed to substantiate its claims and establish a clear and continued use of the mark since 2020.

24.     Defendant, however, has unlawfully harassed the Plaintiff, citing legal actions.

25.     Defendant alleges unregistered use of "CANDLE WITCH" beginning in 2020, but Plaintiff's use predates any such claim by more than two years. Plaintiff has provided documentary evidence confirming use of the "Candle Witch Company" name as early as November 2017, in connection with candle production, product identification, and business correspondence (Exhibit B), and has maintained a public-facing presence under that name since at least March 2018 via social media platforms, including Facebook (Exhibit C).

26.     Defendant's failure to take timely legal action despite Plaintiff's visible and continuous use of the Mark across multiple channels further undermines any assertion of superior rights. Plaintiff's longstanding and consistent use of the "Candle Witch Company" mark entitles it to priority under both federal and common law.

**U.S. TRADEMARK LAW FAVORS DILIGENCE AND REGISTRATION**

27.     The Lanham Act incentivizes trademark owners to proactively file and protect their marks, rather than merely relying on passive or unregistered use. Permitting businesses to later invalidate valid registrations through retaliatory filings, after failing to oppose or register their mark, would contradict the core policy of trademark law: to encourage brand development and marketplace clarity.

28.     In today's competitive economy, similar branding may arise independently, but the law favors those who invest early in intellectual property protection. Defendant's failure to protect its alleged interest, followed by willful infringement of Plaintiff's mark, is both legally and ethically indefensible.

29.     Even if Defendant's claim of prior use is accepted, Defendant has failed to produce any substantiating evidence and has waived its rights by being aware of Plaintiff's use of the Mark federally and failing to oppose the application in the USPTO.

**APPLICATION OF DUPONT FACTORS**

30.     In determining whether there is a likelihood of consumer confusion under the Lanham Act, courts apply the multi-factor test established in *In re E.I. DuPont DeNemours & Co.*, 476 F.2d 1357, 1361 (C.C.P.A. 1973). The analysis focuses on whether the relevant public would mistakenly believe that the goods or services offered under the parties' marks originate from the same source. The following factors weigh heavily in Plaintiff's favor:

## 1. SIMILARITY OF THE MARKS

31.     The similarity of marks is analyzed in terms of sight, sound, and commercial impression. The dominant portion of the mark is given more weight than generic or descriptive elements. Both marks share the identical dominant phrase "CANDLE WITCH." The only difference is Plaintiff's inclusion of the generic suffix term "COMPANY." The sight and sound of the marks are nearly indistinguishable, and they share the same mystical, artisanal connotation. These similarities are particularly likely to confuse consumers in quick-view environments, such as social media or online listings, as they can be easily overlooked.

## 2. SIMILARITY OF GOODS AND SERVICES

32.     Confusion is more likely when the goods are the same or closely related. Identical goods lower the threshold for proving confusion. Here, both Plaintiff and Defendant sell handmade candles. These products are not just similar; they are identical in class, function, and target market, as well as commercial impression, which strongly supports the likelihood of confusion.

## 3. SIMILARITY OF TRADE CHANNELS

33.     Overlapping trade channels weigh in favor of finding confusion. Identical goods are presumed to move through the same channels. Both parties operate on Etsy, TikTok, Instagram, and other online platforms. These are the primary sales channels for both brands, making consumer exposure highly likely in the same environments.

## 4. CONDITIONS OF SALE / BUYER SOPHISTICATION

34.     Inexpensive, non-specialized goods are more likely to lead to confusion. Casual or impulse purchases, especially online, reduce buyer scrutiny. Candles are relatively low-cost items often purchased on impulse. Buyers are unlikely to investigate a brand's history or registration, which increases the likelihood of mistakes.

## 5. ACTUAL CONFUSION

35.     Evidence of actual confusion is not required, but strongly supports a finding of likelihood. The confusion must be unsolicited, credible, and from real consumers. Defendant has claimed evidence of confusion, but has not provided third-party affidavits or reliable documentation to Plaintiff. Plaintiff has not encountered verifiable instances, and any confusion appears to stem from Defendant's refusal to distinguish or cease using the mark.

## 6. DEFENDANT'S INTENT

36.     Continued use after notice indicates bad faith. Intent is inferred from refusal to stop after notice or efforts to trade on Plaintiff's goodwill. After being notified through takedowns and a response to Defendant's cease and desist letter, Defendant not only refused to stop but escalated by filing a TTAB action. The intent appears retaliatory and calculated to usurp Plaintiff's established presence.

37.     Defendant, being aware of the presence of Plaintiff, has maliciously waited until 2025, and until the registration of the Mark by Plaintiff, after Plaintiff has furthered the Mark in various states and federally, to falsely capitalize on the goodwill created by Plaintiff for the Mark. Defendant wants to portray itself as the principal owner of the Mark to enjoy Plaintiff's goodwill

and encash upon it. This delay in bringing forward a claim demonstrates the defendant's ill intention.

## 7. STRENGTH OF PLAINTIFF'S MARK

38.     Strong marks get broader protection. Strength is based on inherent distinctiveness and market recognition. "CANDLE WITCH COMPANY" is suggestive and commercially strong. Plaintiff has invested heavily in brand promotion across social media, a retail store, and nationwide marketing. The mark enjoys growing brand equity and consumer association. See Exhibit "H"

39.     The totality of these factors establishes a strong likelihood of confusion under the Lanham Act, warranting full enforcement of Plaintiff's trademark rights under 15 U.S.C. § 1114.

40.     Defendant's use of the allegedly prior mark has extended beyond Connecticut via platforms such as TikTok, Linktree, and Etsy, further undermining its claim to geographically limited common law rights.

41.     Plaintiff has used the mark in connection with candle goods for more than seven years. Plaintiff has developed significant market recognition through long-standing commercial presence, social media activity, and nationwide consumer outreach.

## COUNT I - TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)

42.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

43.     Plaintiff's commercial use of the "Candle Witch Company" mark predates Defendant's use by several years. Plaintiff has used the mark continuously in commerce since at least November 2017, including on product labels, purchase orders, and public-facing marketing

platforms such as Facebook. See Exhibits B and C. This use supports Plaintiff's priority and further strengthens the presumptions of ownership and exclusivity associated with the federal registration.

44.     Plaintiff alleges that Defendant's use of "CANDLE WITCH" infringes Plaintiff's federally registered mark in violation of 15 U.S.C. § 1114, causing consumer confusion and damaging Plaintiff's goodwill.

45.     Defendant's use of a confusingly similar mark in connection with overlapping goods constitutes trademark infringement under 15 U.S.C. § 1114. Under the Lanham Act, infringement occurs when a party uses a mark in commerce that is likely to confuse with a registered mark. Factors such as similarity of the marks, identity of goods, and overlap in marketing channels guide this analysis.

46.     Plaintiff is suffering irreparable harm to its goodwill, reputation, and brand integrity and has no adequate remedy at law. Here, Defendant uses a nearly identical mark ("CANDLE WITCH") for identical goods (candles) sold through the same channels (Square, TikTok, etc.) to the same consumers. Defendant continued this use after Plaintiff filed, registered, and enforced its trademark, making the infringement willful and harmful.

47.     Plaintiff's use predates any enforceable use by Defendant. Under the *DuPont* likelihood of confusion factors, Defendant's continued use of the infringing mark is likely to cause consumer confusion and constitutes willful infringement.

48.     Defendant's use is willful, and Plaintiff is entitled to injunctive relief, damages, and attorneys' fees.

49.     Defendant's cease and desist letter, along with Plaintiff's cease and desist letter, clearly demonstrate that the parties agree that the marks are confusingly similar. The marks in isolation

of these cease and desist letters are also identical in nature, bar the suffix in the Mark. Therefore, the point of concern is the determination of which party has the better right to the use of the mark.

## COUNT II - FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION (15 U.S.C. § 1125(a))

50.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

51.     False designation occurs when a mark creates confusion as to source, sponsorship, or affiliation. As stated in 15 U.S.C. § 1125(a).

52.     Plaintiff alleges that Defendant has engaged in false designation of origin by using Plaintiff's mark or a confusingly similar variation to falsely indicate association with Plaintiff's products and brand.

53.     Defendant's conduct constitutes false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a).

54.     This conduct misleads consumers, dilutes Plaintiff's brand, and violates Plaintiff's statutory rights under the Lanham Act.

55.     Plaintiff is entitled to statutory remedies for Defendant's misleading representations regarding the source of its goods.

## COUNT III - COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

56.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

57.     Plaintiff also brings claims for trademark infringement and unfair competition under Illinois common law.

58.     Illinois common law provides protection against trademark infringement and unfair competition when a defendant's use of a similar mark is likely to confuse consumers about source, sponsorship, or affiliation. The standard mirrors the Lanham Act.

59.     Here, Defendant's use of an identical mark for identical goods in overlapping channels caused actual and likely confusion, giving rise to common law liability.

60.     Defendant's acts also constitute infringement and unfair competition under Illinois common law.

61.     Illinois law protects unregistered marks where a party has established common law rights through use and reputation. The test mirrors the federal standard for likelihood of confusion.

62.     Defendant's use satisfies the elements for common law infringement, and Plaintiff is entitled to damages and injunctive relief.

## COUNT IV – DECLARATORY RELIEF (28 U.S.C. §§ 2201 - 2202)

63.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

64.     The Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, authorizes this Court to declare the rights of parties in a case of actual controversy.

65.     Declaratory relief is appropriate where a registered trademark owner faces credible legal threats from a party asserting conflicting rights. See 28 U.S.C. §§ 2201 - 2202.

66.     An actual controversy exists between the parties concerning ownership, priority, and rights in the CANDLE WITCH COMPANY mark.

67.     Plaintiff seeks a declaration that:

- Plaintiff is the lawful owner of the U.S. Registration No. 7,538,579;

- Defendant holds no superior rights, including those based on minimal and insufficient common law use, which cannot overcome the legal presumptions of validity, ownership, and exclusivity conferred by Plaintiff's federal registration.

- Plaintiff began using the "Candle Witch Company" mark in commerce at least as early as November 2017.

- Plaintiff's use of the mark predates and supersedes any rights asserted by Defendant.

- Plaintiff's rights are valid and enforceable under federal and common law, and are not subject to cancellation by reason of any alleged priority by Defendant.

- Plaintiff did not commit fraud in filing its application.

- The TTAB cancellation proceeding should be stayed or dismissed.

68. Plaintiff further seeks a declaration that Defendant's TTAB proceeding was filed in bad faith and for improper purposes, and that Defendant's claims of priority and fraud are frivolous and without factual support.

69. A declaratory judgment is necessary to clarify legal rights and prevent further harm to Plaintiff's brand and business.

70. Judicial declaration will resolve this trademark ownership dispute and protect Plaintiff's business from ongoing disruption.

## COUNT V -  STAY OR INJUNCTION OF TTAB PROCEEDING (CANCELLATION NO. 92088335)

71. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

72.     Under 37 C.F.R. § 2.117(a), the TTAB will suspend cancellation proceedings when a federal court addresses the same issues. Courts also apply the doctrine of primary jurisdiction where TTAB proceedings are subordinate to broader civil litigation.

73.     Plaintiff seeks to stay or enjoin the pending TTAB cancellation No. 92088335, which duplicates the issues in this case and was filed in bad faith.

74.     The TTAB proceeding raises identical issues of priority, fraud, and confusion, which are properly and more fully adjudicated in this Court. The TTAB proceeding is being used by the Defendant as an instrument of unfair competition and harassment, rather than as a good-faith forum for dispute resolution. Defendant filed this proceeding only after Plaintiff's enforcement actions succeeded in removing infringing content, and long after Defendant failed to oppose the mark during the USPTO's statutory opposition period. The TTAB action is objectively baseless and was filed in retaliation for Plaintiff's lawful assertion of rights.

75.     Federal courts may enjoin TTAB proceedings when those proceedings are used strategically to delay or undermine a civil action.

76.     This Court should assert jurisdiction and prevent duplicative or retaliatory proceedings.

## COUNT VI - TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

77.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

78.     Illinois law recognizes tortious interference where a defendant intentionally disrupts a valid business expectancy, knowing of the expectancy and lacking legal justification.

79.     To establish tortious interference under Illinois law, Plaintiff must show: (1) a valid expectancy, (2) knowledge of the expectancy by Defendant, (3) intentional interference, and (4) damages.

80.    Defendant has intentionally and unjustifiably interfered with Plaintiff's prospective business relationships, including but not limited to relationships with customers, online followers, vendors, and commercial partners, through misleading claims of priority and assertions of trademark rights that Defendant failed to secure.

81.    Furthermore, Defendant's conduct was willful and malicious, and was intended to discourage or prevent prospective customers and partners from doing business with Plaintiff.

82.    As a result of Defendant's interference, Plaintiff has suffered and continues to suffer economic harm, including lost sales, damaged goodwill, and reputational harm.

83.    Plaintiff has adequately alleged each element and is entitled to recover damages, including compensatory and punitive damages, as well as injunctive relief to prevent further interference.

## COUNT VII - DECEPTIVE BUSINESS PRACTICES

84.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

85.    The Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/2) and the Uniform Deceptive Trade Practices Act (815 ILCS 510/2) prohibit materially misleading business conduct, including false claims of trademark ownership or product origin.

86.    Plaintiff alleges that Defendant's conduct constitutes unfair business practices under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, and/or the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2, including but not limited to:

- Misrepresenting ownership of trademark rights and priority;

- Misleading the public regarding the origin and authenticity of Defendant's goods;

- Attempting to co-opt Plaintiff's brand identity in digital commerce platforms.

87.     Defendant's actions are not only immoral, unethical, oppressive, and unscrupulous, but they also caused substantial injury to Plaintiff that Plaintiff could not reasonably avoid.

88.     Each of Defendant's actions is unethical, misleading, and actionable under Illinois law.

89.     Defendant's actions meet the statutory criteria and entitle Plaintiff to damages, fees, and injunctive relief.

## COUNT VIII - ABUSE OF PROCESS

*(Under Illinois Common Law)*

90.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

91.     Abuse of process under Illinois law occurs when a legal procedure is used not to adjudicate a claim, but to coerce, intimidate, or injure the opposing party.

92.     Plaintiff alleges that Defendant has intentionally and improperly used legal and administrative processes, including Cancellation Proceeding No. 92088335 before the Trademark Trial and Appeal Board, not for their legitimate purpose, but as a tool to harass, intimidate, and disrupt Plaintiff's business operations and relationships.

93.     To prevail on an abuse of process claim under Illinois law, Plaintiff must show that the legal process was used for an improper purpose unrelated to the proceeding's function.

94.     Defendant's use of legal process is not supported by probable cause and was initiated with an ulterior motive, namely, to suppress Plaintiff's market activity, misappropriate its brand goodwill, and retaliate against Plaintiff's good-faith assertion of trademark rights and the delay in the use of this legal process shows the ill intention of the Defendant; after being aware of the

presence of Plaintiff in the market, to delay and then encash upon the furtherance of the Mark by Plaintiff.

95.     Such conduct constitutes an abuse of process under Illinois law. As a direct and proximate result, Plaintiff has suffered economic losses, reputational harm, disruption of business operations, and ongoing legal expenses.

96.     Plaintiff is entitled to an award of compensatory and punitive damages, as well as injunctive relief as appropriate.

## **JURY TRIAL DEMAND**

97.     Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in its favor and against Defendant, declaring Plaintiff the rightful owner of the trademark "CANDLE WITCH COMPANY" and that Defendant holds no superior or enforceable rights. Plaintiff further seeks a permanent injunction barring Defendant's continued use of the infringing mark, an order staying or enjoining the TTAB cancellation proceeding, an award of damages including profits, actual damages, and enhanced damages under federal and state law, attorneys' fees and costs due to the willful and exceptional nature of the conduct, a finding that Defendant's actions constitute abuse of process, and such other relief as the Court deems just and proper.

Respectfully submitted,

Dated: June 5, 2025.                    By: /s/ Sahil Malhotra

                                        DRISHTI LAW
                                        111 N Wabash Avenue Ste. 100, #3262
                                        Chicago, IL 60602

United States
Primary email: sahil@drishtilaw.com
Secondary email(s):
dt.paralegal@drishtilaw.com,
BSN@drishtilaw.com
Phone: 7732341139
*Attorney for Plaintiff*

**REMINDER OF PAGE INTENTIONALLY LEFT BLANK**

# EXHIBIT "A"

# United States of America

## United States Patent and Trademark Office

# Candle Witch Company

**Reg. No. 7,538,579**

**Registered Oct. 15, 2024**

**Int. Cl.: 4**

**Trademark**

**Principal Register**

Candle Witch Company LLC  (ILLINOIS LIMITED LIABILITY COMPANY)
1237 12th Ave.
Moline, ILLINOIS 61265

CLASS 4: Candles; Candle-making kits; Candles and wicks for candles for lighting; Candles being of wax or liquid, for the illumination of carved pumpkins, mini-pumpkins, gourds, and other fruits and vegetables; Candles containing insect repellent; Candles for lighting; Aromatherapy fragrance candles; Beeswax for use in the manufacture of candles; Prayer candles; Scented candles; Soy candles

FIRST USE 3-14-2023; IN COMMERCE 8-27-2023

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

No claim is made to the exclusive right to use the following apart from the mark as shown: "CANDLE" AND "COMPANY"

SER. NO. 97-667,124, FILED 11-08-2022

*Katherine Kelly Vidal*

Director of the United States
Patent and Trademark Office

---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten Years\***
**What and When to File:**

- *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.\* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

# EXHIBIT "B"

Great!   Still in Frankfort.   Probably will not be back in town before you close.   Will get candles out first thing in the morning.   I haven't seen anything from Matthew but will double check the zip link the labels are in.     I got sticker paper so I could go ahead and print them when I get the graphics so that they won't be delayed with printing.   I think we're on track.

On Fri, Nov 3, 2017 at 12:07 PM Downs, Gail (PARKS) <gail.downs@ky.gov> wrote:

> Hi Danielle
>
> How's the candles going?  Did Matthew send the Burley and Bourbon ball labels?
>
> What's the name of your candle company I should be using on purchase orders?
>
> Bradley-Jones Candle Co. or Candle Witch Company?
>
> Thanks
>
> --

# EXHIBIT "C"

       



# Candle Witch Company ✔

1.2K likes • 1.3K followers

Contact us     **Message**     **Like**

Posts    About    Mentions    Reviews    Reels    Photos    More ▾     •••

## Intro

Candle Witch Company
107 South Center Street
Geneseo, Illinois 61254

Open Wednesday-Saturdays from 9am-5pm, and Sundays 9am-3pm

ORDER ONLINE AT: candle-witch-company.square.site

Woman owned & operated 🕯
Hand Crafting Candles since 2011

 **Page** · Gift Shop

🌐 candlewitchcompany.com



## Page transparency

### Page information for Candle Witch Company

**Candle Witch Company**
Gift Shop

### History

**Changed name to Candle Witch Company**
June 25, 2021

**Changed name to Candle Witch Apothecary**
May 18, 2021

**Changed name to Candle Witch Apothecary**
May 18, 2021

**Changed name to Bradley-Jones Candles**
January 26, 2021

**Changed name to Candle Witch Company**
March 11, 2018

**Created - Bradley-Jones Candle Co.**
April 5, 2011

**See less**

### Ads from this Page

This Page is not currently running ads.

**Go to Ad Library**

**Find support or report Page**

Close

# EXHIBIT "D"

7:36   33:29     47%

<    **Candle Witch Company**

✕      **Candle Witch Company**   📞



# Candle Witch Company

NOV 8, 2022 AT 6:08 AM

> Hi. Do you have a LLC for this company?

NOV 8, 2022 AT 6:27 AM

I do.

> What state are you located in?

> So your LLC says candle witch company on it?

It does    ↓

📷 🖼 🎤   Message   🙂 👍









# EXHIBIT "E"

# FARBER LLC

4 CORPORATE DRIVE • SUITE 287 • SHELTON • CT • 06484 • MAIN (203) 286-5140 • FAX (203) 286-5137

April 21, 2025

Candle Witch Company         VIA EMAIL  candlewitchcompany@gmail.com
107 S. Center Street
Geneseo, IL 61254

Re:     CWC 9000 – Investigation of Candle Witch Company Illinois

Dear Sir or Madam,

We represent Candle Witch Co LLC ("CWC") in connection with intellectual property matters. It has come to our attention that you are responsible for the removal of CWC's Linktree (see Exhibit A) and TikTok accounts, which included content clearly associated with its established brand. If other individuals or entities are involved, you are obligated as part of your business duties to advise them of this letter, and it constitutes notice to them through you.

As you are aware, CWC provides a range of goods and services under its CANDLE WITCH mark, including but not limited to handcrafted candles and other merchandise, as well as large-scale public events featuring vendors, live music, food, burlesque performances, and similar entertainment.

Our client has been using the CANDLE WITCH mark in connection with its goods and services in Connecticut since September 2021 and has maintained continuous commercial use of the mark since that time. Through significant investment of time, capital and resources, CWC has cultivated substantial goodwill in the CANDLE WITCH mark. As a result of this consistent and longstanding use, CWC has acquired strong common law trademark rights in the CANDLE WITCH mark within the state of Connecticut. The mark has become widely recognized by consumers as a distinctive identifier of CWC as the source of its products and services, and as an indication of their quality and origin.

Despite these established rights, you began using the identical CANDLE WITCH mark in connection with identical candle products, including the filing of a federal trademark application[1] that claims a first use in commerce date of August 27, 2023. Thus, it is evident that CWC holds priority over the mark by nearly two years in the state of Connecticut. In addition, your improper

---

[1] U.S. Registration No. 7538579 for **CANDLE WITCH** identifying *Candles; Candle-making kits; Candles and wicks for candles for lighting; Candles being of wax or liquid, for the illumination of carved pumpkins, mini-pumpkins, gourds, and other fruits and vegetables; Candles containing insect repellent; Candles for lighting; Aromatherapy fragrance candles; Beeswax for use in the manufacture of candles; Prayer candles; Scented candles; Soy candles* in Class 4

assertion of trademark rights on social media – including challenges to our client's Linktree and TikTok accounts – has directly resulted in the takedown of CWC's official pages and accounts. These actions have disrupted our client's business operations and have caused further confusion among customers and event partners.

We have already obtained documented evidence of actual consumer confusion, including instances where individuals have mistakenly associated your company with our client's brand (see Exhibit B). This confusion is damaging to CWC's goodwill, violates its common law trademark rights and subjects your federal registration (U.S. Reg. No. 7538579) to cancellation.

In view of the foregoing, CWC demands that you immediately cease all interference with its business operations in the state of Connecticut, including but not limited to, the attempted removal of CWC's social media accounts, making false claims of trademark infringement to third-party platforms, and any public or private communications that misrepresent your rights in the CANDLE WITCH mark. In the interest of resolving this matter, CWC is willing to conditionally agree to confine its operations exclusively to the state of Connecticut, provided that you comply with the aforementioned demands.

While CWC remains committed to resolving this matter amicably, if we do not receive a response by **May 1, 2025**, CWC will be forced to consider all available legal remedies. This includes, but is not limited to, initiating a cancellation proceeding before the United States Patent and Trademark Office seeking the cancellation of U.S. Registration No. 7538579 on the grounds of priority and likelihood of confusion.

Nothing in this letter should be deemed a waiver of any of CWC's rights, claims, or remedies, all of which are expressly reserved. We look forward to your timely response.

Very truly yours,

Samantha M. Gerold

**EXHIBIT A**

# Intellectual Property Report - Your Content



April 3, 2025  3:50 PM

Linktree Support                              Details

---

Hi Linktree User,

In accordance with our Intellectual Property Policy, your Linktree Page has been removed in response to a complaint of trade mark infringement. Details of the report can be found at the bottom of this email.

If you believe that your content should not have been removed you can either contact the rights holder directly to request a withdrawal of the complaint, or submit a Counter Notice within 30 days of this email **here**. We ask that you include all the information requested in the form, as incomplete or incorrect information may prevent us from properly assessing your Counter Notification Form.

Please note that if we decide to restore the profile, we may provide a copy of your Counter Notice, including your name and contact details to the rights holder. By submitting a Counter Notice, your consent to us providing that information to the rights holder.

If you are not sure why your content was removed, we recommend you do some further research on intellectual property rights or seek legal advice.



Reply    Reply all    Forward    Delete    More

complaint of trade mark infringement. Details of the report can be found at the bottom of this email.

If you believe that your content should not have been removed you can either contact the rights holder directly to request a withdrawal of the complaint, or submit a Counter Notice within 30 days of this email **here**. We ask that you include all the information requested in the form, as incomplete or incorrect information may prevent us from properly assessing your Counter Notification Form.

Please note that if we decide to restore the profile, we may provide a copy of your Counter Notice, including your name and contact details to the rights holder. By submitting a Counter Notice, your consent to us providing that information to the rights holder.

If you are not sure why your content was removed, we recommend you do some further research on intellectual property rights or seek legal advice.

Sincerely,
Linktree Trust & Safety

**Report ID:** 4194
**Name:** Mari Danielle Jones
**Email address:** candlewitchcompany@gmail.com
**Trademark registration no.:** 7538579
**Jurisdiction:** USPTO
**Content reported:** https://linktr.ee/candlewitchco1692


**Jordon from Linktree**
linktr.ee/support

**EXHIBIT B**

  Adam Salvati   

MAR 3 AT 7:32 PM

 

**Candle Witch Company LLC**
candlewitchcompany.com

Ummm what

 That's not you

MAR 3 AT 7:56 PM



**Barbara Rita**
Active 1 hour ago

OCT 15, 2020 AT 12:55 PM

↩ You messaged Barbara about your story

*No longer available*

Come visit 🎃🎃🎃

NOV 8, 2022 AT 7:54 AM

I have a question

NOV 8, 2022 AT 7:35 PM

What's up

I just saw this

NOV 8, 2022 AT 9:14 PM

OH. I saw you followed a candle witch company on fbook. It's not me. It's someone else with my name and it made me super upset earlier if you wanna un follow it

I'm on Instagram idk if your already following. lg-candlewitch.co

Message



**David Burden**
Active 5 minutes a...

SUN AT 11:41 AM

So I see your following a candle Witch Company instagram, that is NOT meeee. If you wanna unfollow it

That's fake?



Or

   



The second one that's not me

Sneaky bastards. Thanks for the heads up. Why they stealing yer shit

I'm not sure but I got a meeting

# EXHIBIT "F"



*WITHOUT PREJUDICE*

**May 2, 2025**

**DELIVERY VIA Email:**
**samantha.gerold@farberllc.com**

**To:**
Samantha M. Gerold, Esq.
Farber LLC
4 Corporate Drive,
Suite 287, Shelton, Connecticut, 06484

**Re: Your Letter Dated April 21, 2025 – Alleged Trademark Infringement by Candle Witch Company**

Dear Ms. Gerold,

I write on behalf of my client, **Candle Witch Company**, in response to your letter dated April 21, 2025, concerning alleged trademark infringement claims raised by your client, Candle Witch Co LLC ("CWC").

Let me be clear: your client's claims are devoid of merit, both factually and legally. My client is the rightful **federal registrant** of the mark **"CANDLE WITCH COMPANY"** under U.S. Trademark Registration. No. **7538579**, registered on **October 15, 2024**. Federal registration grants **nationwide presumptive exclusive rights** to the mark and a legal presumption of ownership and validity under 15 U.S.C. §1057(b). Your client did not oppose the application during the open opposition window despite having had notice of my client's filing as early as November 2022. Any argument to challenge priority now lacks credibility and is estopped by inaction.

## I. Mischaracterization of Rights

Your client's claimed **common law use** of the mark "Candle Witch," allegedly dating back to September 2021, even if assumed true for argument's sake, does not outweigh the enforceability of a valid federal registration. As you are aware, any rights your client may have in the mark are, at most, limited to common law rights that extend only to the specific geographic areas where your client can demonstrate continuous and prior use. Such rights do not override the nationwide presumptive rights conferred by our client's federal registration and are

Doc ID: af4e75afd07ed08e9ec242057394c5d554aaa118



ineffective outside those narrowly defined regions. The federal rights held by my client **extend across all 50 states**, not just Illinois. Your client has not applied for federal protection, has not operated under a consistent commercial identity using "Candle Witch Company," and has, by your own admission, limited its commercial activity to Connecticut until recently. Our client is prepared to demonstrate continued and long-standing use through evidence, which is also prima facie established by our client's trademark registration, which, as mentioned above, is active and subsisting.

## II. Evidence of Infringement by Your Client

Despite your client's offer to "confine" its operations to Connecticut, its current commercial activities suggest otherwise:

- Your client has promoted and sold products under the infringing name across at least **four states**, including **New York, New Hampshire, Massachusetts, and Pennsylvania**, and offers **nationwide shipping** via its Etsy storefront.
- These acts constitute a clear infringement under the Lanham Act and are actionable.

We also note that your client has never used a **formal business website, registered a business domain**, or maintained consistent branding under the name "Candle Witch Company." My client, by contrast, has established [www.candlewitchcompany.com](www.candlewitchcompany.com) and maintains all major social media accounts under the @candlewitchcompany handle. These factors significantly influence the likelihood of confusion and the analysis of superior rights.

## III. Baseless Allegations Regarding Social Media Takedowns

Your claim that my client made false reports to third-party platforms is unfounded. My client submitted valid complaints under its federally registered mark. It is the platforms themselves—not my client—that assessed and determined those reports merited takedown action. If your client believes those platforms acted in error, the appropriate recourse is through their respective dispute resolution processes, not by sending threatening letters based on meritless infringement claims.

## IV. Position Moving Forward

To resolve this matter, we demand the following:

1. **Immediate cessation of all use** of the "Candle Witch Company" name or any confusingly similar variation by your client, including but not limited to social media, marketplaces, live events, and product branding.



2. **Written confirmation** by May 9, 2025, that your client will comply and take down all infringing materials and accounts.
3. Failure to do so will result in:
   - Ongoing takedown actions across all infringing platforms,
   - A petition to the USPTO for cancellation of any subsequently filed application by your client,
   - A civil action seeking **a preliminary injunction and damages**, including costs and attorneys' fees under 15 U.S.C. §1117.

We are not interested in any compromise premised on your client's continued use of the mark. Your client's claim to "Candle Witch" as a personal moniker does not create trademark rights in "Candle Witch Company." Your own letter confirms the parties are using **identical marks for identical goods**, making this a textbook case of infringement in which the **registrant holds the superior right**.

All rights of my client remain expressly reserved.

Sincerely,

*Sahil Malhotra*

**Sahil Malhotra**
Drishti Law LLC
111 N Wabash Avenue, Chicago, Illinois – 60602
773-232-1139
Attorney for Candle Witch Company

# EXHIBIT "G"

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
## BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

IN THE MATTER OF TRADEMARK REGISTRATION NO. 7,538,579

| | |
|---|---|
| Trademark: CANDLE WITCH COMPANY<br>Registered: October 15, 2024 | |
| **Candle Witch Co LLC,** | |
| Petitioner, | Cancellation No.<br>[not yet assigned] |
| vs. | |
| **Candle Witch Company LLC,** | |
| Registrant. | |

## PETITION TO CANCEL

Candle Witch Co LLC ("Petitioner"), a limited liability company organized and existing under the laws of Connecticut, with a principal place of business at 108 N. Turnpike Rd., Apt. F, Wallingford, CT, 06492, believes that it is and will continue to be damaged by the continued registration of U.S. Trademark Registration No. 7,538,579 for the mark "CANDLE WITCH COMPANY" ("Registrant's Mark"), and hereby petitions to cancel the same pursuant to 15 U.S.C. § 1064 on the following grounds:

## I. Petitioner's Common Law Rights and Priority

1. According to the records of the USPTO, the current owner of U.S. Registration No. 7,538,579 is Candle Witch Company LLC, an Illinois Limited Liability company with a principal place of business at 1237 12th Ave., Moline, IL 61265 ("Registrant"). A

copy of the USPTO database record for U.S. Registration No. 7,538,579 is attached as **Exhibit A** and made of record.

2. Petitioner has continuously used the mark "CANDLE WITCH" ("<u>Petitioner's Mark</u>") in commerce since at least as early as September 2021 in connection with handcrafted candles and other merchandise, as well as large-scale public events featuring vendors, live music, food, burlesque performances, and similar entertainment (collectively "<u>Petitioner's Goods and Services</u>"). Additionally, Petitioner began offering "Candle Witch" branded products through Etsy starting in 2020. See **Exhibit B**.

3. Petitioner's mark has not been federally registered, but it has acquired significant goodwill and consumer recognition throughout the state of Connecticut, amounting to enforceable common law trademark rights under state and federal law. See 15 U.S.C. § 1115(b)(5).

4. The filing date of the trademark application for Registrant's U.S. Registration No. 7,538,579 is November 8, 2022 and includes a first use in commerce date of August 27, 2023.

5. Petitioner's rights in Petitioner's Mark are prior in time to both Registrant's filing date and first use in commerce date in the subject registration.

6. As such, Petitioner has priority of use over the Registrant. See 15 U.S.C. §1057(c) ("...***except*** for a person whose mark has not been abandoned and who, prior to such filing – (1) has used the mark.")

## II.    <u>Likelihood of Confusion – 15 U.S.C. § 1052(d)</u>

7. The dominant portion of Registrant's Mark, "CANDLE WITCH," is identical to Petitioner's "CANDLE WITCH" mark, rendering Registrant's Mark confusingly

similar in appearance, sound, meaning and commercial impression to Petitioner's Mark.

8.  The goods identified in Registrant's registration, namely: "candles; candle-making kits; candles and wicks for candles for lighting; candles being of wax or liquid, for the illumination of carved pumpkins, mini-pumpkins, gourds, and other fruits and vegetables; candles containing insect repellent; candles for lighting; aromatherapy fragrance candles; beeswax for use in the manufacture of candles; prayer candles; scented candles; [and] soy candles" ("Registrant's Goods") are identical and/or closely related to those goods offered by Petitioner, i.e., candles.

9.  The use of Registrant's Marks in connection with Registrant's Goods is likely to cause confusion, mistake or deception among consumers as to the source of Registrant's Goods within the meaning of Section 2(d) of the Lanham Act, 15 U.S.C. § 1052(d), because Registrant's Mark would be used in connection with goods that are identical to those offered by Petitioner under Petitioner's Mark.

10. Indeed, instances of actual consumer confusion have occurred and have been documented. See **Exhibit C**. Petitioner has received several inquiries from customers questioning whether Petitioner and Registrant are affiliated or related, evidencing actual confusion in the marketplace.

11. The continued registration of Registrant's Mark will support and assist Registrant in the infringing use of its "CANDLE WITCH COMPANY" mark and will give colorable, exclusive statutory rights to Registrant in violation of Petitioner's superior statutory and common law rights.

III.    **Registrant's Bad-Faith Enforcement Efforts**

12. On or around April 3, 2025, Registrant initiated improper takedown actions against Petitioner's social media accounts, including Petitioner's LinkTree and TikTok accounts, despite Petitioner's lawful and long-standing use of its mark within the state of Connecticut. See **Exhibit D**.

13. In an effort to resolve the matter amicably, Petitioner sent a cease-and-desist letter to Registrant on April 21, 2025, offering to coexist by limiting Petitioner's use to its established common law territory of Connecticut and requesting that Registrant refrain from further interference with Petitioner's local use. A true and correct copy of this letter is attached hereto as **Exhibit E**.

14. In response, Registrant sent a letter dated May 2, 2025, refusing to consider coexistence, demanding that Petitioner cease all use of its mark, and threatening continued takedown actions. A true and correct copy of Registrant's response is attached hereto as **Exhibit F**.

IV.    **Fraud on the USPTO**

15. On information and belief, Registrant had actual knowledge of Petitioner's use and prior rights in the mark "CANDLE WITCH" prior to filing the application that matured into U.S. Registration No. 7,538,579.

16. On November 8, 2022 at 6:08am Eastern Time, Petitioner sent Registrant a direct message via Facebook, expressly inquiring about Registrant's company and use of the term "CANDLE WITCH," and informing Registrant of Petitioner's rights and existing presence in the marketplace. See **Exhibit G**.

17. According to USPTO records, about two hours later – on November 8, 2022 at 8:04am Eastern Time – Registrant filed the application that matured into U.S. Registration No. 7,538,579.

18. On information and belief, Registrant was aware of Petitioner and Petitioner's use of "CANDLE WITCH" at the time Registrant filed the application that matured into U.S. Registration No. 7,538,579.

19. On information and belief, Registrant knowingly made a false declaration to the United States Patent and Trademark Office when it asserted that "no other person... has the right to use the mark in commerce", despite being directly informed of Petitioner's existence just hours before filing the application underlying U.S. Registration No. 7,538,579. See 15 U.S.C. § 1051(a)(3)(D). A true and accurate copy of Application No. 97/667,124 is attached hereto as **Exhibit H**.

20. On information and belief, Registrant's false declaration was made with the intent to deceive the USPTO and was material to the issuance of the registration.

21. On information and belief, U.S. Registration No. 7,538,579 was fraudulently procured through a knowingly false and material misrepresentation made with the intent to deceive the United States Patent and Trademark Office. Accordingly, the registration should be cancelled in its entirety.

WHEREFORE, Petitioner prays that the Trademark Trial and Appeal Board grant its petition to cancel U.S. Trademark Registration No. 7,538,579.

Respectfully submitted,

May 9, 2025

_____
Samantha M. Gerold
Thomas Hughes
Farber LLC
4 Corporate Drive, Suite 287
Shelton, CT 06484
samantha.gerold@farberllc.com
thomas.hughes@farberllc.com

**ATTORNEYS FOR PETITIONER**

## **CERTIFICATE OF SERVICE**

This is to certify that a true copy of the foregoing PETITION FOR CANCELLATION is being served by email to counsel for Registrant as follows:

Email: sahil@drishtilaw.com

Sahil Malhotra
Drishti Law LLC
111 N Wabash Avenue, Chicago, IL 60602


May 9, 2025

_____
Samantha M. Gerold

# EXHIBIT "H"

candlewitchcompany

 **candlewitchcompany** ✓ ···

Follow    **Message**    +👤

**Candle Witch Company**

🧵 candlewitchcompany

Product/service
Woman owned 🕯
Handcrafted Soy Candles 🕯
Candle Witch Company TM 🕯
107 S Center Street, Geneseo IL🕯
Live your best light🕯
#candlewitchcompany
🔗 www.candlewitchcompany.com and 1 more

    

Order onli...   Welcome!   Trademark...   Highlights   #witchtorch

| **185** posts | **284** followers | **224** following |
|---|---|---|

⊞    

  

     

☰

*Candle Witch Company*



This website uses cookies.

We use cookies to analyze website traffic and optimize your website experience. By accepting our use of cookies, your data will be aggregated with all other user data.

ACCEPT

# C A N D L E   W I T C H   C A N D L E S

## Live Your Best Light!

Candle Witch candles not only illuminate your sense of space but also bring a sense of magic and enchantment to your surroundings. Each candle is carefully handcrafted with the finest ingredients to ensure clean, long lasting burn and a captivating fragrance experience.

Our Candles are made with natural soy wax, a renewable and biodegradable material that burns cleaner and longer than traditional paraffin. We use only lead-free wicks made from a blend of cotton and paper, ensuring a safer, toxin free burn with every light. Our fragrance oils are carefully selected to deliver rich, true-to-life scents that fill your home with warmth and charm.

True to our commitment to purity, all of our products are petroleum-free, pthalate-free, cruelty-free, and dye-free, allowing you to enjoy the cleanest, most eco-friendly burn possible. At Candle Witch Company, we combine the power of nature with the art of candle-making to create an experience that's as magical as it is mindful!

  

## This website uses cookies.

We use cookies to analyze website traffic and optimize your website experience. By accepting our use of cookies, your data will be aggregated with all other user data.

ACCEPT

       



# Candle Witch Company ✔

1.2K likes • 1.3K followers

Contact us     **Message**     **Like**

Posts    About    Mentions    Reviews    Reels    Photos    More ▾                    •••

## Intro

Candle Witch Company
107 South Center Street
Geneseo, Illinois 61254

Open Wednesday-Saturdays from 9am-5pm, and Sundays 9am-3pm

ORDER ONLINE AT: candle-witch-company.square.site

Woman owned & operated 🧙
Hand Crafting Candles since 2011

 **Page** · Gift Shop

🌐 candlewitchcompany.com



       

 100% recommend (17 Reviews)

## Photos

See all photos



Privacy · Terms · Advertising · Ad Choices  · Cookies · More · Meta © 2025

## Featured

 Candle Witch Company      Candle Witch Company

       

Another give away By CWC and Sweets & Keto by Ana! We'll be drawing the winner on Wednesday!!!!!

Its official!!!! Candle Witch Company is now a trademarked brand!!!!
...

 **Sweets & Keto by Ana**
May 5 at 9:39 AM 🌐

Update 5/6 1:40pm!
Here is the basket!! It includes...

 

Candle Witch Company

Reg. No. 7,538,579     Candle Witch Company LLC (ILLINOIS LIMITED LIABILITY COMPANY)
                      1237 12th Ave
Registered Oct. 15, 2024     Moline, ILLINOIS 61265

Int. CL: 4            CLASS 4: Candles; Candle-making kits; Candles and wicks for candles for lighting;
                      Candles being of wax or liquid, for the illumination of carved pumpkins, mini-
Trademark             pumpkins, gourds, and other fruits and vegetables; Candles containing insect repellent;
                      Candles for lighting; Aromatherapy fragrance candles; Beeswax for use in the
Principal Register    manufacture of candles; Prayer candles; Scented candles; Soy candles

                      FIRST USE 3-14-2023; IN COMMERCE 8-27-2023

                      THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO
                      ANY PARTICULAR FONT STYLE, SIZE OR COLOR

                      No claim is made to the exclusive right to use the following apart from the mark as
                      shown: "CANDLE" AND "COMPANY"

                      SER. NO. 97-667,124, FILED 11-08-2022

## Posts

Filters

 **Candle Witch Company** ✔️
1h · 🌐

···

Got a birthday coming up this weekend you forgot about? Check out the release of our newest brew, our birthday cake scent!  This scent brings the magic of birthdays to … **See more**



       



Move your mouse to view the photo in 3D



4                                                                    2 shares

Like                          Comment                          Share

Comment as Brian Naranjo Londoño





| | | |
| --- | --- | --- |
| 🔍 | **Most popular** | Magical Home & Hearth Mason … | More |

## Most popular

### Season of the Witch Home & Hearth Candle - End of Season Sale

Step into the heart of autumn with Season of the Witch - a spiced pumpkin blend that calls to mind crackling fires, falling leaves, and…

$5.00



### Patchouli Wax Melt

$6.00

### Patchouli Home & Hearth Candle

$18.00

### Lemon Poppy Seed Home & Hearth Candle

$18.00

Most popular | Magical Home & Hearth Mason … | More

Magical Home & Hearth Mason Jar Candles

### Brandied Pear Home & Hearth Candle

**Raise a glass (or light a wick) to the perfect balance of ripe pears, smooth brandy, and a touch of spice. Whether curling up with a...**

$18.00



### Caramel Popcorn Home & Hearth Candle

**Bring the magic of fairs, festivals, and movie nights to your home. This hand-poured soy candle blends the aromas of freshly...**

$18.00



### Apple Orchard Home & Hearth Candle

**Just like a freshly picked apple on a cool, crisp day, this candle is bursting with the bright, juicy scent of orchard-fresh fruit. Hand...**

$18.00



### Hot Apple Toddy Home & Hearth Candle

**Hot Apple Toddy brings the perfect blend of sweet and spice, wrapping your home in notes of baked apples, Kentucky bourbon,...**

$18.00



### Jamaica Me Crazy Home & Hearth Candle

**If golden sunsets, salty breezes, and fresh fruit cocktails had a scent, this would be it. Let the scent of sun-ripened citrus, juicy...**

$18.00



### Morning Brew Home & Hearth Candle

**The best part of waking up is lighting your Morning Brew**



Most popular    Magical Home & Hearth Mason ...    More

**Tomato Vine Home & Hearth Candle**

**Bring the essence of a thriving summer garden into your home with the earthy, green aroma of a tomato vine. Inspired by cottage...**

$18.00



**Nag Champa Home & Hearth Candle**

Inspired by the sacred scent of traditional Nag Champa, this candle blends rich sandalwood, golden amber, and soft floral notes. Wheth...

$18.00



**Plum Good Home & Hearth Candle**

Bright, juicy plums create a playful yet luxurious aroma, bringing deep, fruity vibes to your space. Sweet yet sophisticated, it's a scen...

$18.00

**Banana Nut Bread Home & Hearth Candle**

**Like a loaf fresh from the oven, this scent layers golden bananas, nutmeg, and a touch of cinnamon with a rich vanilla cake...**

$18.00

Low stock

**Battletown Yule Home & Hearth Candle - End of Season Sale**

**Inspired by the age-old traditions of Yule, this scent weaves together winter berries, aromatic greenery, and warming...**

$5.00

Sale

**Honeydew Home & Hearth Candle**

Bright and refreshing, this honeydew candle fills your space with the

Most popular          Magical Home & Hearth Mason ...          More

**O' Tannenbaum - End of Season Sale**

Sale

**Like the scent of a freshly cut Christmas tree, this hand-poured soy candle brings the magic of the season home. With rich fir, fresh...**

$5.00

Low stock

**Season of the Witch Home & Hearth Candle - End of Season Sale**

Sale

Step into the heart of autumn with Season of the Witch - a spiced pumpkin blend that calls to mind crackling fires, falling leaves, and...

$5.00

**Maple City Magic Home & Hearth Candle**

Our signature scent for Geneseo, enjoy the sweet scents of hot pancakes, creamy butter, finished off with a drizzle of maple syrup....

$18.00

**Twisted Mint Julep Home & Hearth Mason Candle**

$18.00

**Lemon Poppy Seed Home & Hearth Candle**

$18.00

## Apothecary Candles

**The Shire Apothecary Candle**

Most popular          Magical Home & Hearth Mason ...          More

$25.00

**Season of the Witch Apothecary Candle - End of Season Sale**

Sale

**Notes of pumpkin, nutmeg, and caramelized sugar bring the perfect balance of spice and sweetness to this candle. This scent fills you...**

$15.00

**Wildwood Rose Apothecary Candle**

**The scent of freshly picked wild roses intertwined with green leaves and soft woods enchants this candle. Not your...**

$25.00

**Scarborough Fair Apothecary Candle**

**Transport your senses to a lush herb garden with Scarborough Fair soy candle, inspired by the timeless ballad and infused with...**

$25.00

**Spill the Tea Apothecary Candle**

With notes like white tea, ginger, and mandarin, this bright scent can turn any space into a peaceful retreat. Let this candle fill your space...

$25.00

## Candle Accessories

**Jar of Matches (80 matches/jar, 4" length)**

$7.00

Most popular      Magical Home & Hearth Mason ...      More

$10.00

Low stock

**Wickman Wick Trimmer & Wick Dipper**

$16.00

Low stock

**Wick Dipper by Wickman smokeless candle extinguisher - Silver**

$7.00

**Wick Dipper by Wickman smokeless candle extinguisher - Black**

$7.00

## Wax Melts

**Maple City Wax Melt**

$6.00

**Lemon Poppyseed Wax Melt**

$6.00

Most popular          Magical Home & Hearth Mason ...          More

**Scarborough Fair Wax Melt**

$6.00

**Vanilla Vixen Wax Melt**

$6.00

**Wildwood Rose Wax Melt**

$6.00

**Jamaica Me Crazy Wax Melt**

$6.00

**Twisted Mint Julep Wax Melt**

$6.00

**Patchouli Wax Melt**

$6.00

Most popular       Magical Home & Hearth Mason ...       More

## Location & Hours

Candle Witch Company
107 South Center Street
Geneseo, Illinois 61254
(309) 428-3131

Get directions

| | |
|---|---|
| Monday | Closed |
| Tuesday | Closed |
| Wednesday | 9:00 am - 5:00 pm |
| Thursday | 9:00 am - 5:00 pm |
| Friday | 9:00 am - 5:00 pm |
| Saturday | 9:00 am - 5:00 pm |
| Sunday | 9:00 am - 3:00 pm |

Most popular      Magical Home & Hearth Mason ...      More

Home

    



© 2025